Good morning, your honors. May it please the court, Lisa Chun for the petitioner Samuel Dacostagomez-Aguilar. The main issue in this case is the rescission statute relating to in absentia removal orders and the proper statutory interpretation of that statute. The rescission statute states that if a noncitizen can demonstrate that he did not receive proper notice, his in absentia removal order may be rescinded. The rescission statute was at issue in a recent Fifth Circuit decision, Rodriguez v. Garland, where the Fifth Circuit noted that the rescission statute contains a textual reference to the notice to appear statute. A notice to appear is a charging document in removal proceedings, and the notice to appear statute enumerates all of the information that such a document must contain, which includes time and place of the initial hearing. We argue that a notice to appear that lacks the requisite time and place information is considered improper notice under the rescission statute that allows for the in absentia removal order to be rescinded. Let's say we agree with you that the notice of appearance, the NOA, is invalid. What about the second notice, the notice of hearing? Why wasn't that a satisfy notice? The rescission statute states that there needs to be proper notice in accordance with the notice to appear statute, which is at 1229 A-1, or the notice of hearing statute at 1229 A-2, so it is written in the disjunctive. And so what we agree with the Fifth Circuit's holding in Rodriguez v. Garland that if you meet the lack of proper notice under the A-1 notice to appear statute, then that is sufficient to show improper notice. Yeah, and so that, you know, I want to talk about the Fifth Circuit case with your opposing counsel, but I don't understand your argument with that. When you say the rescission statute, you're talking about the one, I guess it's 1229 A-C-2, right, that says if the alien demonstrates that the alien did not receive notice in accordance with paragraph one or two of this title, right? Yes, Your Honor. That's the second statute. Yeah, so why isn't, why, so paragraph one is the NOA, and then paragraph two is the notice of hearing, right? That's what those paragraph one or paragraph two, that's what that reference is? Yes, Your Honor, and if I could just note, they are two different documents, so the notice to appear is the charging document, which contains the basis that the government is alleging that the non-citizen is removable. It also includes the time and place information. The notice of hearing only includes the time and place of the hearing, in addition to the consequences of failure to appear. So the notice to appear is functionally different than a notice of hearing in that it is a charging document. And so it, what we're arguing is that if you can show improper notice, an improper notice to appear was issued, then that satisfies the statute that's written in the disjunctive. Right. Is there any way, is there any way for someone who received, who did not receive a proper notice to appear, is there, is there ever any way that that can be cured? Or have all individuals who received the deficient notice, could they, could they all just wait until their second removal hearing, until their second hearing, and then just stay? And once they finally get, once the government catches up with them, just say that they need to reopen their hearing? Well, the, the Department of Homeland Security is the agency that issues the notice to appear. So they're the prosecuting agency. They could easily issue a new notice to appear with all the requisite information. Do you know? So they could, they could. That's happening now after NIS Chavez, what DHS is doing with respect to notices of appearance? Yes, it is occurring in, in some courts. Yes. When you say it is occurring, what do you mean? In, as far as I know, in, sorry, my question is, are they, is DHS reissuing notices of appearance? Yes. So I can give you an example, your honor in, in some instances where the notice to appear did not include time and place, a non-citizen can move to terminate proceedings. And if the proceedings are terminated, then the Department of Homeland Security, then issues a new statutorily compliant notice to appear. So it can be cured. It can be cured by the Department of Homeland Security. At any point, even before the non-citizen is ordered removed. Let me, let me just quickly just run back to the statutory interpretation issue, which I want you to address this for me. So let's say that I was, that I had taken a class, right? And so I told you that I did not receive an A or B in the class.  A plus, no, I'm kidding.  But, but, but my point, my point being is that not, I received not an A and I received not a B, right? I didn't receive either of them, right? That's the way English language usually works when you, when you follow an or, when an or follows a not. And here it's did not receive in accordance with paragraph one or two. And so I'm trying to figure out why the same English language understanding of the hypothetical that I gave you wouldn't apply to the paragraph one or two. That is, I did not receive notice in accordance with paragraph one, and I did not receive notice in accordance with paragraph two. I guess because the, there's, the word says or, so I, but that's, I guess that's my point. If I say I didn't receive an A or a B, your response wouldn't be that I received an A, right? Your response would be, I received neither an A nor a B. I didn't receive either one. And so I'm trying to figure out why that's, that's not the best way to read that or in that paragraph, given that it follows a not. I guess then, because those are the two relevant notice requirements by statute, I don't know what third option there would be out there. And if I could just note that the board's decision in also adopts this disjunctive interpretation of the 1st rescission statute. So there are 2 statutes. There's the 1st, 1 that deals with what the government must demonstrate in order for a, an essential removal order to be issued by the immigration judge. And then there's the 2nd rescission statute that deals with what a non citizen must demonstrate in order to have that in absentia removal order rescinded. And so in the board only interpreted that 1st statute regarding the government's burden and did not consider at all the rescission statute. And under the board's reading of the government's burden, and both of these statutes reference A1 and A2 notice, they adopted that disjunctive. And so our argument is that, well, if the board is going to adopt a disjunctive interpretation in the 1st statute regarding the government's burden, where they can pick A1 or A2 notice, then that reading should be consistent in the 2nd statute that deals with the rescission and what a non citizen must demonstrate. Let me ask you another question about the disjunctive issue with the OR. So there are some people, and correct me if I'm wrong, but there are some people who just get the notice of appearance and that's it. They don't get a notice of hearing because nothing's changed from the notice of appearance. Is that right? Well, theoretically, that should be what happens that the notice to appear should contain the time and place of the initial hearing. But that isn't necessarily consistently done by the Department of Homeland Security. And so therein lies the issue that let's, let's just, let's just go with that, though. And so, I guess my point is, there are some people who never receive notice under paragraph 2. Right. They just receive notice under paragraph 1, their notice of appearance. They get no change of hearing. There's no change. So would those people be able to reopen because they did not receive notice in accordance with paragraph 2 of section 1229A? No, Your Honor, I don't believe so, because there never was that sort of, there never was a notice of hearing issued because the notice to appear supplied all. Yeah, that's all the information. That's exactly right. But if we read it in a disjunctive as the way you're suggesting, I don't see how we could avoid that reading because it says that you get to reopen if the alien did not receive notice in accordance with paragraph 1 or 2. And so there would be some people who just never received notice under paragraph 2 because it was never issued. How do we avoid that if we read it in the disjunctive the way you're suggesting? Well, I believe the reason Congress placed 1 or 2 in there is because there are some people who appear for several hearings. So they were issued a notice to appear, and let's say in this situation, it was a proper notice, totally statutorily compliant, and then they appeared for that hearing, and then they got a continuance because they needed to find time to find counsel. And so the court mailed them an A2 notice where it's a second hearing. And successively, there's several hearings before you get to the final trial. If anywhere in between that first hearing where they appeared and the 3rd or 4th hearing where they didn't appear, they would be, if they did get that A2 notice, then they could legitimately be ordered removed in their absence. And so I think that's why Congress included the A2 in there, is that they contemplated a proper notice to appear would be served on the non-citizen that included the first hearing, and then there would be successive hearings after that, because in removal proceedings, it takes several hearings before you get to the final trial date. Counsel, let me ask you a question talking about the deficient NTA and how it dovetails with the obligation to update the address. So in Perez-Sanchez, our court has held that an unquestionably deficient NTA did not limit the IJ's jurisdiction over removal proceedings. So if a deficient NTA is enough to initiate removal proceedings upon service to an alien, then why is that not enough to advise the alien of his obligation to update his address? Yes, Your Honor. The issue in Perez-Sanchez, as Your Honor points out, was jurisdiction. And jurisdiction, the jurisdiction is mentioned in the regulation, and the regulation makes no reference to the notice to appear statute. So in the rescission statute, as well as in the stop time rule in Pereira and Chavez, there is a specific textual reference to the notice to appear statute. And that is exactly what the Fifth Circuit pointed out in Rodriguez v. Garland, that this specific textual reference of the notice to appear statute in the rescission statute requires that notice under that provision meet the statutory requirements that Pereira and Chavez pointed out. And so jurisdiction, because it stemmed from the word jurisdiction stemmed from the regulations and not a statute, this court held that the notice to appear statute didn't implicate jurisdiction. And we are not challenging jurisdiction. Our case falls squarely within the rescission statute that does contain a specific reference to the notice to appear statute, as the stop time rule did in Pereira and Chavez. And that's why we are arguing that those decisions apply to the rescission statute. All right, thank you. And that's I took you over time, but you've reserved three minutes for rebuttal. Thank you, Your Honor. Yes, Ms. Farrell. Good morning, Your Honors, and may it please the Court. Cori Farrell on behalf of the Attorney General. The agency in this case acted within its considerable discretion when it denied petitioners almost 15 years untimely motion to reopen and rescind his in absentia removal order. There are many issues in this case, but ultimately, the record shows that petitioner received the required notice of his immigration court hearing, mailed to the address he provided, and he failed to appear. The Supreme Court's decisions in Pereira and Ms. Chavez have no impact on the validity of the in absentia removal order. I have a question. I will, I will say that I think the most natural reading of the statute is what the reading that was suggested by Judge Brasher. But here's my problem with that reading. If, if a non-citizen receives a fully compliant notice to appear, but then never receives the follow-up, the A-2, then at that point, even though the person did not have notice of the hearing where they were actually removed, would they be, would they be barred from asking for reopening? I think it's easy for me to understand why receiving just a two notice would be enough. It's harder for me to understand why just a one would be enough. Your Honor, I think that's why we should kind of think about the notices as tied to the specific hearing that the non-citizen failed to attend. We're looking at the, whether the non-citizen received notice of that hearing and then failed to attend the hearing. And then if the non-citizen can show no notice for that particular hearing, whether it's, was noticed in the NTA under A-1 or in a subsequent hearing notice under A-2, then that's what you're looking at. Does that answer your question? Well, yes, except it seems that you're saying that, so I guess, I guess you're saying to look at whether it's, whether, whether the notice was received for the particular hearing that was missed. So, even if the person received the A-1 notice, I guess, in that case, they probably would have been held responsible to show up at which point someone would have said, oh, no, your hearing's been continued. Here's the new date. Is that the argument? That, correct, Your Honor. I mean, because if they received the A-1 notice and the notice to appear, and then, so you're saying if they, then the notice was, the hearing date was changed. Right, so they never, they never received notice of the changed hearing date. So they didn't go to the, they didn't attend their hearing, but it was because they didn't have notice of it. Under your argument, they would still not be able to reopen because they had received the A-1 notice. Even though they didn't appear, they didn't appear for the hearing for which they received A-2 notice. Right, or for which they didn't receive A-2 notice, right? Right, so if they didn't appear for the hearing for which they received A-2 notice, and they established failure to receive notice, let's say that the, in the record, there's an A-2 notice that has completely the wrong address. And petitioner can say, look, the, it was mailed to, it wasn't mailed to the address I provided, then that would be a basis for reopening, for failure to establish notice. Is that consistent? And I, and I, is that consistent with your or argument? Because they, they would have received A-1, but not A-2. So, is, is that consistent with the or? Are you, I guess you're not saying that one or the other is sufficient, you're saying one for whichever hearing they did not attend? Right, I'm, I think our argument is that it, that the government can provide notice either way. And then if the non-citizen fails to establish notice, that's where reopening is warranted. And that's why here we're looking at this as a notice issue. Petitioner was personally served with a notice to appear, provided an address, left that address, and did not update the immigration court with his new address. And so, so then when the January 11, 2005 notice was delivered, he said, I didn't receive it. That's why I didn't appear at my February hearing, but he didn't update his address. So this is more of a notice issue, rather than, than the Pereira-Nez Chavez issue, looking at the stop time rule. Here's, here's my question to you. So, the Fifth Circuit, I see this case as being similar to the Fifth Circuit case that you filed a 28-J letter about, Rodriguez, I think is what the name of it is. Yes, your honor. The Fifth Circuit, basic, the way I read it, and you tell me if I'm reading it right, I guess, is my point. So the way I read it is the Fifth Circuit said, look, the notice to appear was invalid, didn't include the appropriate information. And just didn't address the issue about the separate notice of a hearing and said, we're going to send this back to the BIA to figure this out. And we're not going to do it ourselves. Is that a fair reading of what the Fifth Circuit said? I believe that is the correct reading, your honor, because the, the Fifth Circuit did not address, address the board's precedential decisions on this issue, and nor did it address the specific statutory language. And, you know, Ms. Chavez turned so much on the word A in the statute, but here we have a very different statute that, an absentia statute that has the word or in it, and, and the Fifth Circuit did not grapple with the distinction in the statutes. Yeah. So did, and here, here's the, my follow-up question to that is, is there something that the BIA's decision here in our case said that's different than what the BIA's decision in the Fifth Circuit said? Because I look at the BIA's decision in this case, and, you know, I haven't been reading these BIA decisions very long, but this one is particularly short, I think, and it's hard for me to figure out whether it really addresses this issue that you're putting forward, or whether it just does what the BIA did in the Fifth Circuit case. Well, I think in, in this case, the, the BIA on the last paragraph on page three states that the petitioner's argument is foreclosed by the decision in matter of Pena Mejia. And in Pena Mejia, the board is, is a published board decision that deals with the disjunctive language and explains how the in absentia statute is different because of the word or in the two notice provisions. So, so I think that all the, although the, it may appear that the board's decision is short, I think it addresses the issue and points to its published decision on this matter. Do you know whether the board did the same thing in the Fifth Circuit case, or whether it did something differently? Did it say something different in that case? Your Honor, I do not know exactly what the board's decision in that case, but I did go back and look at the government's brief in the Rodriguez case, and we did not make the disjunctive language argument in that, in that case. So, that leads me to believe that the board did not explain that, but I am unsure, Your Honor. So, so back to, so I think that the, the, this case really turns on the language of the statute and the word or used in the statute, allowing notice to be provided in either a notice to appear or a subsequently filed notice of hearing, and that's what we have here. We have a petitioner who was personally served with a notice to appear. He provided address, an address. He left that address and failed to update his address with the immigration court, and then he received several subsequent notices of hearing and then failed to appear. And once he failed to appear after that notice was sent to him, the immigration judge properly entered an in absentia removal order. Your Honor, if you have any further questions, I'm happy to answer them. Or respond, it will rest on our brief. Thank you. Ms. John, you have 3 minutes. Thank you. Thank you, Your Honors. If I could just respectfully disagree with opposing counsel's interpretation of Ms. Chavez. The A that the Supreme Court was referring to was not contained in the stop time rule, the A, which was the indefinite article was article was contained in the notice to appear statute. And so the, the, the, the notice to appear is a statutory statutorily defined document. And Ms. Chavez made clear that it is 1 single document that must be statutorily compliant. And so it might be helpful to think in terms of conceptually what Pereira, the court stated in Pereira v. Sessions was that a notice to appear alleged notice to appear that does not meet all the statutorily compliant requirements is a putative notice to appear. So, it's not even a real notice to appear and this is important because it's a charging document. And so the, the argument that that the Supreme Court's raised in Pereira and Ms. Chavez was why is the time and place information less significant than charging the non citizen with removability? It's all the same. It's all in the statute. It all has to be contained in the statute. And so if the argument is the government can pick and choose what portions of the statute it's going to comply with, including in a notice to appear, that doesn't make any sense. And so Mr. DeCosta Gomez was never served with a notice to appear. He was served with a putative notice to appear. And that's important because it is a single document that must be statutorily compliant, similar to an indictment in a criminal case. And so this notice by installment theory that the government is advocating was rejected by Ms. Chavez. And again, it's not simply a notice issue. It's a notice to appear issue because the rescission statute contains a specific reference to the notice to appear statute. So, it is different than jurisdictional claims where there is no textual reference to that statute. And as the Fifth Circuit and Rodriguez v. Garland noted, the stop time rule and the rescission statute both contain this textual reference. And that's why the Supreme Court's decisions in Pereira and Ms. Chavez do apply. And so we would state also that the address requirements don't attach until a proper notice to appear is issued. And so in this case, again, it was a putative notice to appear. Therefore, the address requirements don't attach. And the onus is on the government to provide statutorily compliant documents to non-citizens. And I see my time is up. Thank you, Your Honors. Thanks to both of you. And we will take the case under advisement and under submission. And the next case is.